FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

2014 FEB 18  AM 9: 32

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ KCC
            DEPUTY

GEORGE EDWARD FININER,
                    Movant,

-vs-                                                    Case No.  A-13-CA-479-SS
                                                        [No. A-12-CR-046(3)-SS]
UNITED STATES OF AMERICA,
                    Respondent.

_____

## O R D E R

BE IT REMEMBERED on the 31st day of January, 2014, the Court called a hearing in the above-styled cause, and the parties appeared by and through counsel.  Movant George Edward Fininer was also present in person.  Before the Court is Fininer's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [#79], the Government's Response [#84], and Fininer's Reply [#87].  Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders DENYING the motion.

### Background

On February 2, 2012, Movant George Edward Fininer was charged in a two-count indictment with (1) conspiracy to possess with the intent to distribute a controlled substance, which involved more than twenty-eight grams of a mixture or substance containing a detectable amount of cocaine base or crack, and more than 500 grams of a mixture or substance containing a detectable amount of cocaine, Schedule II Controlled Substances, contrary to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and in violation of 21 U.S.C. § 846 (Count One); and (2) possession with the intent to distribute a controlled substance, which involved more than twenty-eight grams of a mixture or substance

containing a detectable amount of cocaine base or crack, and more than 500 grams of a mixture or substance containing a detectable amount of cocaine, Schedule II Controlled Substances, contrary to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and in violation of 21 U.S.C. § 846 (Count Two).

On March 15, 2012, Fininer was charged in a one-count criminal information with conspiracy to possess with intent to distribute a controlled substance, which offense involved a mixture or substance which contained a detectable amount of cocaine base, a Schedule II Controlled Substance, all in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. On March 15, 2012, Fininer entered a plea of guilty to the one-count information pursuant to a plea agreement. On June 8, 2012, this Court sentenced Fininer to a 135-month term of imprisonment, followed by a three-year term of supervised release, and ordered Fininer pay a $100 mandatory assessment fee. A direct appeal was not taken in this case.

On June 10, 2013, Fininer filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, along with a Memorandum of Law in Support. On July 17, 2013, the Respondent United States of America (the Government) filed its response, and on September 27, 2013, Fininer filed his reply. After reviewing the file and specifically Fininer's claim his counsel, David Peterson, failed to file a notice of appeal, the Court appointed Fininer a lawyer and ordered an evidentiary hearing on the issue. *See* Order of Dec. 6, 2013 [#88]. This hearing occurred on Friday, January 31, 2014.

**Analysis**

I.      **Section 2255—Legal Standard**

Generally, there are four grounds upon which a defendant may move to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255: (1) the imposition of a sentence in violation of the

-2-

Constitution or the laws of the United States; (2) a lack of jurisdiction of the District Court that imposed the sentence; (3) the imposition of a sentence in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Section 2255 is an extraordinary measure; it cannot be used for errors that are not constitutional or jurisdictional if those errors could have been raised on direct appeal. *United States v. Stumpf*, 900 F.2d 842, 845 (5th Cir. 1990). If the error is not of constitutional or jurisdictional magnitude, the movant must show the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice." *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994). In addition, a defendant who raises a constitutional or jurisdictional issue for the first time on collateral review must show both "cause" for his procedural default, and "actual prejudice" resulting from the error. *Placente*, 81 F.3d at 558.

## II.  Ineffective Assistance of Counsel

Fininer argues he received ineffective assistance of counsel based on the following grounds: (1) his attorney failed to file a notice of appeal; (2) his attorney encouraged him to enter a plea of guilty to a charge when counsel knew the Government could not prove he agreed with others to violate the law; (3) his attorney failed to ensure the Government's factual basis met all of the elements for which his guilty plea was offered; (4) his attorney failed to offer proof showing Fininer was entitled to a reduction for acceptance of responsibility; and (5) his attorney informed the district court he would make a false statement if the district court so desired.

The United States Supreme Court's decision in *Strickland v. Washington* provides the familiar two-pronged test for establishing a claim of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not

functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

In evaluating counsel's performance, care must be taken to "eliminate distorting effects of hindsight." *Id.* at 690.  Accordingly, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*  If counsel's performance is found to be deficient, it must also have prejudiced the result to afford any relief to the defendant. *Id.* at 691.  To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

## A.    Failure to File Notice of Appeal

Fininer first alleges his attorney, David Peterson, denied him effective assistance of counsel by failing to file a notice of appeal on his behalf as requested.  An attorney's performance is "professionally unreasonable" if he fails to follow the defendant's expressed instructions with respect to an appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000).  In addition, an attorney has an obligation to (1) "file a notice of appeal, or (2) . . . discuss the possibility of an appeal with the defendant, ascertain his wishes, and act accordingly." *Id.*  Failure of counsel to perfect an appeal upon the request of his client may constitute ineffective assistance of counsel, which would entitle the defendant to an out-of-time appeal. *United States v. Gipson*, 985 F.2d 212, 215 (5th Cir. 1993). Prejudice is presumed under *Strickland*.  *See United States v. Tapp*, 491 F.3d 263, 266 (5th Cir.

-4-

2007).  A defendant will be entitled to an out-of-time appeal if he is able to demonstrate by a preponderance of the evidence he requested an appeal, and his attorney failed to follow his instructions.  *Id.*

Fininer lays out his claim Peterson failed to file a notice of appeal in his petition and the accompanying memorandum of law.  Specifically, on June 8, 2012, the Court gave Fininer a letter at sentencing and told him his counsel would go over the letter with him, which described how Fininer had fourteen days to tell his counsel to file a notice of appeal or else the right would be waived.  *See* Gov't's Resp. [#84], Ex. B (Sentencing Tr.), at 20–21.  Fininer claims he told his attorney he wanted to appeal before exiting the courtroom on the day of sentencing.  *See* Mot. to Vacate [#79-1], (Mem. of Law), at 3.  In response, Fininer claims Peterson told him the appellate waiver prevented an appeal, but he would still file the notice of appeal if Fininer still wanted to after they met and discussed the issue further.  *Id.*

Before the expiration of the fourteen days, Peterson and Fininer met personally and discussed his appellate rights.  *Id.*  Fininer claims he told Peterson at this meeting he wanted to file an appeal, and counsel stated a notice of appeal would be promptly filed.  *Id.*

Months later on December 7, 2012, after having not heard from Peterson, Fininer wrote a letter inquiring about his appeal.  *Id.* at 4.  In this letter, Fininer indicated he told Peterson on the day of sentencing to file the notice of appeal, and counsel's response was it would be filed on the same date.  *Id.*

Peterson responded in a letter on December 12, 2012, and told him he had a different recollection of events.  *Id.* at 5.  According to Peterson, on the day of sentencing Fininer told him Fininer waived his appeal pursuant to the plea agreement.  *Id.*  Further Peterson writes he advised

-5-

Fininer of his right to appeal but again reminded him of the waiver contained in the plea agreement. *Id.*

At the evidentiary hearing, Fininer took the witness stand and told his recollection of events, which was essentially consistent with the sequence of events described above. Regarding the meeting in the holding facility days after the sentencing hearing, Fininer indicated the reason for his desire to appeal was the denial of his acceptance of responsibility. Fininer stated he had no conversations with Peterson about whether counsel thought this would be a wise appeal.

Peterson also took the witness stand. He discussed the meeting at the holding facility and the content of the conversation. According to Peterson, he told Fininer he thought the only possibly valid ground for appeal was the denial of acceptance of responsibility. Peterson also testified he advised Fininer of two primary dangers of filing an appeal. First, Peterson told Fininer the Government could file a summary motion to dismiss the appeal based on the waiver of appeal in the plea agreement, and second, filing the appeal would be a violation of the plea agreement. In addition, counsel stated he warned Fininer if he were successful on appeal and the case were remanded, he would be sentenced in the same court again, and counsel believed Fininer would most likely receive the same or possibly even a higher sentence. In other words, Fininer may then be charged again under the original two-count indictment, and he would lose the benefits received under the plea agreement.

Peterson also testified he kept contemporaneous notes indicating Fininer told him not to file an appeal. First, he described a standard form he fills out when a client has instructed him to file or not file a notice of appeal. Peterson filled out this form which indicated Fininer did not want to file an appeal. Counsel also wrote down in his case notes the content of their conversation, including

Fininer's stated desire not to file an appeal.  The form was filled out the same day as their meeting while the case notes were recorded several days later.  Peterson indicated there was no doubt in his mind Fininer told him not to appeal.

Finally, Peterson stated if Fininer had told him to file a notice of appeal at any time during the fourteen days following sentencing, he would have filed the notice of appeal, and the file would have been forwarded to an appellate lawyer in San Antonio for the appeal.  Counsel testified he had no reason not to file a notice of appeal.

Having heard the testimony of both individuals at the hearing, the Court finds Peterson's testimony to be credible and Fininer's not credible.  Peterson's testimony is corroborated by the standard form he filled out and the notes he created based on his post-sentencing meeting with Fininer, as well as by later correspondence.  Those documents and notes reflect Fininer consistently expressed his desire not to file a notice of appeal.

Based on this evidentiary record, the Court expressly finds Peterson properly consulted with Fininer regarding his desire to appeal.  After consultation, Peterson followed Fininer's specific instructions not to file a notice of appeal.  Peterson therefore acted in a professionally reasonable manner.  *See Flores-Ortega*, 528 U.S. at 477.  Indeed, the record indicates Peterson capably negotiated with the prosecutor and turned an original indictment with a sentencing range of five-to-forty years into a superseding information with a range of zero-to-twenty years.  Moreover, Fininer's sentence was originally based on a base offense level of thirty-two because the investigation determined the offense involved 507.94 grams of cocaine base.  *See* Presentence Investigation Report (PSR) ¶ 23.  Fininer's counsel convinced the Court Fininer should only be held responsible for the 35.96 grams of crack cocaine actually found on his person.  Had Fininer been held responsible for

all of the cocaine base involved in the offense, his sentencing guideline range would have ultimately been 262 to 327 months and capped at the statutory maximum of 240 months. PSR ¶ 62. Based on counsel's representation, the Court reduced Fininer's offense level from 32 to 26, which produced a sentencing range of 120 to 150 months.[1]  Sentencing Tr., at 9. This essentially reduced Fininer's sentence by close to ten years.

In sum, Fininer received a very favorable plea agreement and sentence under the circumstances, largely due to counsel's able performance. Fininer's testimony he wanted to file a notice of appeal is not credible because the reality is he benefitted greatly from his plea agreement, and by filing a notice of appeal, he would have lost a substantial amoutn of those benefits. Furthermore, Peterson had absolutely no reason not to file a notice of appeal if Fininer indeed did want him to do so. Peterson is an experienced and competent public defender who would never give perjured testimony on the issue of representation. Because Fininer has failed to carry his burden of showing he requested counsel to file a notice of appeal—to the contrary, the preponderance of the evidence shows Fininer did not want Peterson to file an appeal—he is not entitled to an out-of-time appeal.

## B.    Encouragement to Enter Guilty Plea

Fininer argues counsel was ineffective for encouraging Fininer to plead guilty to a charge for which counsel knew the Government could not offer proof on its essential elements. Specifically, Fininer contends Peterson knew the most important element of a conspiracy is the agreement with

---

[1] The reduction to a range of 120 to 150 months was based on the Court's sustaining two of counsel's objections. First, counsel objected to the amount of crack cocaine Fininer should be held responsible for, arguing it should only be 35.96 grams. The Court sustained the objection. Sentencing Tr., at 9. Second, counsel objected to holding Fininer responsible for the gun found at the apartment on the day of the search, and the Court sustained this objection because the evidence in the record did not establish a connection between Fininer and the firearm. *Id.*, at 3.

a person(s) known or unknown, and counsel should have known the Government could not meet its burden with respect to this element.   Therefore, argues Fininer, Peterson should have never encouraged Fininer to plead guilty to conspiracy in the information.  *See* Mem. of Law, at 15–16.

At the rearraignment proceeding, Fininer advised the Magistrate Judge who took his plea he understood the charge of conspiracy in his one-count information, he discussed the charges with his attorney, and he discussed any potential defenses he might have to the charges with his attorney.  *See* Gov't's Resp. [#84], Ex. A (Rearraignment Hr'g), at 13.   He further indicated he was satisfied with the legal representation he received from his attorney.  *Id.*, at 13–14.  The factual basis supporting Fininer's plea was incorporated into his plea agreement.  *See* Plea Agreement [#33], at 7–8.

The factual basis shows in early January 2010, law enforcement officials observed activity at 5813 Wellington Drive, Apt #B, Austin, Texas, which was consistent with drug distribution.  *Id.* In fact, on one occasion, the police stopped individuals who had left the residence and found them in possession of crack cocaine, which they admitted they had purchased from Marvin Brown and Cameron Gray, residents of 5813 Wellington Drive, Apt #B.  *Id.*  A warrant was subsequently executed on January 17, 2010, and Fininer, Brown, and Gray were found inside the residence.  *Id.* Fininer was in possession of approximately thirty-seven grams of crack cocaine.  *Id.*  Also found inside the residence was approximately 539 grams of powder cocaine, baking soda, and drug paraphernalia, along with approximately $14,000 in U.S. currency.  *Id.*  There was no question, based on this factual record, the house served as a manufacturing and cooking center for cocaine base.

Fininer stated at his rearraignment he was in agreement with the factual basis contained in the plea agreement.  Rearraignment Hr'g, at 14–16.  He agreed he was guilty of the conspiracy

charge contained in the superseding information, and he and his attorney discussed every portion of the plea agreement "line-by-line." *Id.* Fininer further acknowledged he had the right to have his case presented to a federal grand jury, and he wished to waive or give up the right by pleading guilty. *Id.* at 16.

First, Fininer's solemn declarations under oath at rearraignment "constitute a formidable barrier in any subsequent collateral proceedings." *Montoya v. Johnson*, 226 F.3d 399, 406 (5th Cir. 2000). Furthermore, his plea of guilty waived all non-jurisdictional defects leading to his conviction and sentence. *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000). A plea of guilty is tantamount to a conviction. *Boykin v. Ala.*, 395 U.S. 238, 242 (1969). Fininer's statements under oath at his rearraignment demonstrate he knew the factual basis for his plea, and he knew he was entering a plea of guilty to conspiracy to distribute crack cocaine.

Second, Fininer's assertion the Government could not prove a conspiracy is highly questionable. Fininer's argument appears to be there was little to no evidence connecting him to Brown, Gray, and the broader drug operation running out of 5813 Wellington Drive, Apt #B. Sentencing Tr., at 8–9. Instead, Fininer merely admitted to possessing the crack cocaine on his person and being a street dealer. *Id.* But Fininer argues there was little to no proof he was part of Gray and Brown's operation.

Fininer is mistaken, however, because the Government did have proof of a conspiracy between him, Gray, and Brown. Fininer was found in Gray and Brown's house, which served as a cooking and distribution center for crack cocaine, and he personally was in possession of approximately thirty-seven grams of crack cocaine. A confidential informant, after the warrant was executed, indicated Fininer looked familiar as a person seen at the house before the day of the search.

-10-

These facts alone offer strong proof Fininer was in a conspiracy with Brown and Gray, and Fininer offered no evidence to the contrary.

Fininer now contends he got his cocaine base from a person who he will not identify as his source, but even if this highly unlikely contention is true, he was still involved in a conspiracy to sell the crack he personally possessed. Fininer overlooks the fact a conspiracy consists of an agreement between Fininer and persons known *or unknown*.[2] Indeed, at the evidentiary hearing on January 31, 2014, Fininer testified he obtained the crack cocaine found on his person from an individual who was not present at the house and with whom he conspired to possess with the intent to distribute. Whether the Government could identify the unnamed individual is immaterial, and of course the only reason the Court could not identify the unnamed individual is because Fininer, Brown, and Gray all refused to cooperate and tell law enforcement officials what their operations were and who was involved.

Therefore, the Government had proof on the element of an agreement for purposes of pursuing a conspiracy charge. In this sense, Fininer's claim his attorney was ineffective for advising him to plead guilty to conspiracy when the Government could not present proof of such a crime is simply inaccurate.

Third, despite being charged with conspiracy, Fininer's base offense level, for sentencing purposes, was ultimately based on the 35.96 grams of crack he possessed when he was arrested and

---

[2] At sentencing, Fininer's counsel indicated it was at least his understanding Fininer's plea to conspiracy did not entail a conspiracy with Gray and Brown. *See* Sentencing Tr., at 6–7. In counsel's view, Fininer merely "pled to a conspiracy to distribute the crack cocaine that was on him," suggesting the conspiracy was with an unidentified third party. *Id.* at 7. The Government interjected and clarified, "No. It's with others known and unknown . . . ." *Id.* The point is Fininer pleaded guilty to conspiracy, and there is evidence to support a conspiracy, whether the conspiracy consisted of: (1) Fininer, Brown, and Gray; (2) Fininer, Brown, Gray, and unknown individuals; or (3) Fininer and unknown individuals totally unrelated to Brown and Gray's operation.

not the entire amount of drugs discovered in the residence. Sentencing Tr., at 9. In other words, Fininer fails to show he was prejudiced by any encouragement to plead guilty to conspiracy because he was only sentenced based on the crack cocaine he admitted he possessed.

Fourth, the original two-count indictment contained a Class B felony, but after plea negotiations, Fininer was charged in the superseding information, which contained a Class C felony. This change reduced Fininer's sentence exposure from a mandatory minimum sentence of five years and a maximum sentence of forty years to a maximum sentence of twenty years with no mandatory minimum.[3] If anything, Fininer was the beneficiary of a generous plea deal negotiated by his attorney, and Fininer fails to establish his counsel behaved deficiently in encouraging him to plead guilty to the conspiracy charge contained in the information.

## C.    Insufficient Factual Basis

Fininer argues counsel was ineffective for failing to ensure the Government's factual basis met each essential element on the charge for which the plea was offered. Specifically, Fininer argues the factual basis in the plea agreement made no allegation of each essential element needed to sustain its burden, and counsel knew the Government failed to allege these necessary facts. Nevertheless, Fininer contends, his counsel failed to ensure all of the elements could be proven if it went to trial and failed to take any action to ensure acceptable proof was available during plea negotiations and the plea colloquy. *See* Mem. of Law, at 16. This claim is essentially identical to Fininer's claim analyzed above in Part II(B) arguing counsel was ineffective for encouraging to him to enter a guilty

---

[3]The Government, in its response, mistakenly represents Fininer's exposure was reduced to a maximum sentence of ten years. *See* Gov't's Resp. [#84], at 9. While the Court cannot tell if this is a typographical error or an error in calculation, the fact is Fininer's exposure, according to the charge in his superseding information, was a maximum sentence of twenty years.

plea when the Government could not prove a conspiracy. For the same reasons described in Part
II(B), his contention that his lawyer was ineffective for failing to ensure the Government had a
sufficient factual basis for the conspiracy charge also fails.

## D.    Acceptance of Responsibility

Fininer argues counsel was ineffective for failing to offer an acceptable justification as to why
Fininer should have received a decrease in offense level for acceptance of responsibility.
Specifically, Fininer argues counsel failed to offer evidence of Fininer's entitlement to a three-level
decrease for acceptance of responsibility when he knew met the required standards in the Sentencing
Guidelines. *See* Mem. of Law, at 16–17.

At sentencing, Fininer's counsel argued Fininer should be granted a reduction for acceptance
of responsibility because he admitted his involvement in the offense.[4] *See* Sentencing Tr., at 6–9.
According to counsel, the evidence merely showed Fininer admitted he was at the residence with the
crack cocaine on his person, and he was a street level dealer. *Id.* at 9. In counsel's view, the factual
basis and evidence did not show Fininer agreed to or was part of the larger conspiracy related to
Brown and Gray's drug operation. *Id.* The Court overruled the objection because Fininer, along
with others found at the residence, refused to cooperate and provide more information about the drug
operation. *Id.* at 10. In so doing, Fininer was minimizing his own conduct in the charged
conspiracy. At the evidentiary hearing on January 31, 2014, Fininer indicated he knew nothing about
Brown and Gray's operation and therefore was incapable of providing information on their

---

[4]To be clear, counsel did not make a written objection to the denial of acceptance of responsibility contained
in the Presentence Investigation Report, but he brought it up for the first time at sentencing. The Government objected
to the oral objection at sentencing, and the Court sustained the Government's objection. *See* Sentencing Tr., at 9–10.

conspiracy. But Fininer did not just refuse to cooperate with respect to providing information on Gray and Brown, he refused to cooperate altogether. In other words, Fininer refused to discuss where he got the thirty-seven grams of crack cocaine he admitted he had on his person. Indeed, Fininer and his counsel scratched out the portions of the plea agreement indicating Fininer agreed to cooperate. *See* Plea Agreement [#33], at 4. Fininer was minimizing his own conduct with respect to the conspiracy to which he pleaded guilty. He was capable of cooperating, at a minimum, with respect to the drugs he personally possessed, even if his highly unlikely claims he knew nothing of Gray and Brown's drug operation are taken as true. The fact is Fininer did not want to provide any information about where he got his drugs and how he intended to distribute them, and the consequence for this refusal to cooperate was a denial of the acceptance of responsibility reduction.

The Fifth Circuit Court of Appeals will affirm a sentencing court's decision not to award a reduction for acceptance of responsibility "unless it is without foundation." *United States v. Solis*, 299 F.3d 420, 458 (5th Cir. 2002). The Court's decision not to grant Fininer a reduction under U.S.S.G. § 3E1.1 after finding he minimized his involvement in the offense was not without foundation. Counsel presented Fininer's argument for why he was deserving of the reduction, but the Court rejected the argument because Fininer would not cooperate beyond admitting he possessed the drugs found on him and was a street dealer. Fininer would provide no information on his sources, and counsel's arguments could not overcome this refusal to cooperate. Fininer fails to demonstrate deficient performance by counsel.

### E.    False Statement

Fininer argues counsel was ineffective for attempting to encourage Fininer to commit perjury before the Court. Specifically, Fininer argues when Peterson told the Court at sentencing Fininer

would provide a false statement if the Court so desired, he exposed Fininer to the possibility of being subject to perjury charges. *See* Mem. of Law, at 17.

At sentencing, Peterson told the Court Fininer advised him he was really scared about not getting acceptance of responsibility considering he pleaded guilty and fully admitted he was selling drugs. Sentencing Tr., at 6. Counsel said Fininer told him he would "say that he was involved in everything" if the Court wanted, but counsel said it may have been Fininer was not involved directly with Gray and Brown's operation. *Id.* According to Fininer, since he now insists he was not involved with Gray and Brown, his attorney's representation to the Court he would say something not true if the Court desired "demonstrates counsel's total disregard of his duties, the rule of law and [Fininer's] constitutional rights." Memo. of Law, at 17.

Fininer's claim has no merit. As an initial matter, there is no indication Peterson was actually advising Fininer to tell the Court he was "involved in everything" even if it were not true. Peterson was merely demonstrating the degree to which Fininer was scared about not getting acceptance of responsibility (i.e., Fininer was so scared he would tell the Court he was involved when he was not). Counsel's statement does not support a finding he was actually telling Fininer to perjure himself. In addition, it makes no sense. Fininer is essentially arguing counsel was encouraging Fininer to lie to the Court by announcing to the Court Fininer is willing to lie to the Court. There is no indication counsel was encouraging Fininer to commit perjury, and there is no showing of deficient performance.

Moreover, the record in this case shows Fininer's sentence was based solely on the 35.96 grams of crack cocaine discovered on his person when he was apprehended. Sentencing Tr., at 9. Therefore, while Fininer did not get the acceptance of responsibility reduction he wanted, he was

-15-

only sentenced for the crack cocaine found in his pants and not for the rest of the cocaine found in Brown and Gray's apartment. Counsel's statement to the Court that Fininer was scared about not getting a reduction for acceptance of responsibility and would say he was involved in everything if the Court wanted did not prejudice him.

The Court finally notes Fininer did not have to say he was "involved in everything" to get his reduction. Accepting as true his highly unlikely assertion he knew nothing about Gray and Brown's operation, he still could have divulged the source of the drugs he admitted he possessed and intended to sell. He instead refused to cooperate and minimized his responsibility. This behavior is the primary reason the Court denied him acceptance of responsibility. Fininer's claim fails.

## III.    Insufficient Factual Basis

Fininer alleges the factual basis in his case was insufficient to sustain his plea of guilty. This claim is essentially identical to his claims—rejected in Part II(B)–(C) above—that his counsel was ineffective for encouraging him to plead guilty to a charge for which counsel knew the Government could not offer proof on its essential elements, and for failing to ensure the Government's factual basis met each essential element on the charge for which the plea was offered. For the same reasons described in in Parts II(B)–(C), Fininer's contention the factual basis to sustain his plea of guilty was insufficient fails.

## Conclusion

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejects a movant's

constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the denial of Fininer's § 2255 motion on substantive or procedural grounds, nor find the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Thus, a certificate of appealability shall not be issued.

Accordingly,

IT IS ORDERED that Movant George Edward Fininer's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [#79] is DENIED;

IT IS FINALLY ORDERED that a certificate of appealability is DENIED.

SIGNED this the _17_ day of February 2014.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE